**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOHN MICHEAL JIMENEZ VENTURA**<br><br>**Petitioner,**<br><br>**-against-**<br><br>**USA**<br>**Respondent.** | **1:23-cv-4428 (ALC)**<br>**1:21-cr-71 (ALC)**<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

*Pro se* Petitioner John Micheal Jimenez Ventura filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner claims that 1) his former counsel provided ineffective assistance by failing to advise him of the immigration consequences of his plea, 2) that he is innocent of the offense to which he pleaded guilty and 3) that there was insufficient evidence to support his conviction. Because all of Petitioner's claims fail, the Petition is DENIED.

## BACKGROUND

### Offense Conduct

Beginning in or about May 2019, Petitioner participated in a scheme to defraud a high-end bicycle manufacturer called Specialized Bicycles ("Specialized"). As part of the scheme, Petitioner and others placed online orders for bicycles using stolen credit cards. Pre-Sentence Report ("PSR") ¶ 12(b). After the bicycles had been delivered to Federal Express locations or physical bicycle stores for pickup, participants in the scheme would pick up the bicycles using false identification documents. *Id*. By the time Specialized realized that the credit card charges were fraudulent and had been canceled, the bicycles had been stolen. *Id.*

In total, participants in the scheme fraudulently obtained at least 22 bicycles, valued at approximately $194,000. PSR ¶ 12(c). Petitioner was responsible for over $70,000 of that loss. *Id.* ¶ 19.

On October 9, 2020, Petitioner was stopped by the police after picking up a fraudulently purchased bicycle and found in possession of credit cards and identification documents that did not belong to him. PSR ¶ 17. Petitioner's iCloud account contained evidence that he was involved in reselling bicycles that had been fraudulently obtained from Specialized. PSR ¶ 12(d). For example, on November 14, 2020, the defendant wrote in a message to a customer: "I'm no bike store and I'm not a magician either so the way I get my bikes is not 100% legal therefore I don't feel comfortable showing my ID." *Id.* ¶ 18(c).

**Procedural History**

**A. Charges and Guilty Plea**

The Petitioner was charged by Complaint on July 7, 2021, and arrested on July 12, 2021. The Petitioner was represented at his initial appearance by Thomas Ambrosio, Esq. After being released on bail, the Petitioner immediately absconded, resulting in the issuance of a bench warrant on July 20, 2021.

On August 10, 2021, the Petitioner was charged in a superseding indictment with conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(a)(5) (Count One), and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count Two). S1 21 Cr. 71 (ALC) ECF No. 21. On November 19, 2021, the Petitioner was arrested pursuant to the July 20, 2021 bench warrant, arraigned on the superseding indictment, and remanded into federal custody.

On January 27, 2022, the Petitioner pleaded guilty to Count One pursuant to a plea agreement dated December 12, 2021 (the “Plea Agreement”). The Petitioner was represented at the change of plea hearing by Barry A. Weinstein, Esq. At the beginning of the hearing, the Petitioner was sworn in and, in response to a question from the Court, confirmed that he understood he was under oath and could face criminal prosecution for intentionally making false statements. Plea Transcript (“Plea Tr.”), ECF No. 34 at 3:22-4:4. After asking the Petitioner a series of preliminary questions in English and without an interpreter, the Court found that the Petitioner had “answered the [Court’s] questions appropriately” and was competent to proceed. Plea Tr., Dkt. 34 at 5:1-4.

During the change of plea hearing, the Petitioner stated that he had read the Plea Agreement, that he had signed it and authorized Mr. Weinstein to sign it, and that the Plea Agreement constituted the entirety of his agreement with the Government. Plea Tr., ECF No. 34 at 12:14-13:1. The Plea Agreement included the following provisions regarding the immigration consequences of the Petitioner’s guilty plea and conviction:

- “The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences.”

- “The defendant acknowledges that he has discussed the possible immigration consequences (including removal or denaturalization) of his guilty plea and conviction with defense counsel.”

- “The defendant affirms that he wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States.”

- “The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of

the defendant's conviction on the defendant's immigration or naturalization status."

• "It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction."

• "It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction."

Later in the hearing, the Court and the Petitioner had the following exchange regarding the immigration consequences of the Petitioner's plea and conviction:

THE COURT: I want to make sure that you understand that if you are not a United States citizen, your guilty plea and conviction make it very likely that you would be deported or removed from the United States. Do you understand?
THE DEFENDANT: I understand that, yes.
THE COURT: Have you discussed that with your attorney?
THE DEFENDANT: Yes, we have.

Plea Tr., Dkt. 34 at 16:3-11. Mr. Weinstein then confirmed that he had had those discussions with the Petitioner. *Id*. at 16:12-14. In response to a question from the Court, the Petitioner said he was satisfied with his legal representation up until that point. *Id*. at 17:5-7.

The Plea Agreement further provided that the defendant "has accepted this Agreement and decided to plead guilty because he is in fact guilty." Plea Agreement at 4. Near the close of the change of plea hearing, this Court and the defendant had the following exchange regarding the defendant's participation in the charged scheme to defraud:

THE COURT: What is it you did that makes you guilty of [Count One]?
THE DEFENDANT: I committed conspiracy to access device fraud, and I was arrested in

October 9, 2020, picking up a bike in Wall, New Jersey.
THE COURT: Did you enter into an agreement with some other people?
THE DEFENDANT: Yes.
THE COURT: Was the purpose of this agreement to do something that was against the law?
THE DEFENDANT: Yes, your Honor.
THE COURT: Did this agreement involve using credit cards that belonged to other people?
THE DEFENDANT: Yes.
THE COURT: Were credit cards belonging to other people actually used?
THE DEFENDANT: Yes, correct.
THE COURT: Were they used to purchase items?
THE DEFENDANT: Yes.
THE COURT: Did the value of those items in a one-year period exceed $1,000?
THE DEFENDANT: Yes.
THE COURT: Did you enter into this agreement knowingly and willfully?
THE DEFENDANT: Yes, your Honor.
THE COURT: I believe you said that you picked up a bicycle, is that correct, around October 9, 2020?
THE DEFENDANT: Correct.
THE COURT: Was this bicycle purchased using one of those credit cards?
THE DEFENDANT: Yes.
THE COURT: Did you know that you did not have permission from the owners of those credit cards to use those credit cards?
THE DEFENDANT: That is correct, yes.

(Plea Tr., Dkt. 34 at 18:21-20:5)

**B. The Sentencing Proceeding**

On May 26, 2022, the Court sentenced the Petitioner to 14 months' imprisonment, to be followed by two years of supervised release. ECF No. 43. As relevant to the instant motion, the Petitioner's immigration consequences were once again discussed at the sentencing hearing. *See* Sentencing Transcript ("Sent. Tr.", ECF No. 44 at 6:13-18) (Mr. Weinstein: "There is also a possibility that [the defendant] may well be deported. . . . [A]fter this sentence, whatever it is, is completed, he can spend an untold amount of time in immigration custody just waiting to be deported, if he is deported."); 8:2-4 (The Court: "I am certainly considering the fact that there is

a possibility that he will be deported and could spend some time in custody . . . .").

At the sentencing hearing, the defendant repeatedly apologized for his criminal conduct, "sincerely from [his] heart," and said he had "learned [his] lesson" and would "never, ever do anything like that again that will harm anybody like that ever." Sent. Tr., at 9:8, 9:18-21. He again stated that he was satisfied with his legal representation. *Id*. at 9:25-10:2.

**C. The Defendant's Habeas Petition**

The Petitioner, who was on supervised release and in federal immigration custody at the time this Petition was filed, did not file a direct appeal of his conviction or sentence. On May 26, 2023, the Petitioner filed this Motion seeking to vacate his conviction pursuant to 28 U.S.C. § 2255. ECF No. 1. On September 14, 2023, the Government filed its Opposition. ECF No. 56. On November 13, 2023, Petitioner filed a Reply. ECF No. 59. On May 15, 2024, Petitioner filed a letter reiterating his claims in his Petition and Reply. ECF No. 10.

**D. The Defendant's Waiver of Attorney-Client Privilege**

On June 28, 2023, the Court issued an order finding that the Petitioner's ineffective assistance of counsel claim waived the attorney-client privilege over his communications with prior counsel, and ordered the Petitioner to execute a form providing his informed consent to the waiver. ECF No. 51. On July 6, 2023, the Petitioner executed the form, thereby authorizing his prior counsel to provide testimony relating to the defendant's claims of ineffective assistance of counsel.

**E. Declarations of the Defendant's Prior Counsel**

Prior counsel—Thomas Ambrosio, Esq., Anthony L. Ricco, Esq., and Barry A. Weinstein, Esq.—each submitted a sworn declaration in response to the defendant's claims. *See*

ECF Nos. 55 ("Ambrosio Decl."), 54 ("Ricco Decl."), and 53 ("Weinstein Decl.").

**i. Thomas Ambrosio, Esq. – Presentment and Bail**

Following the Petitioner's initial appearance on July 12, 2021, the Petitioner advised Mr. Ambrosio that "he was not a U.S. Citizen and that he recently pleaded guilty in New Jersey State Court to a fraud or theft indictable charge." Ambrosio Decl. ¶ 11. Mr. Ambrosio then told the Petitioner that, in his opinion, the Petitioner "was likely to be deported to his country of origin as a result of his New Jersey State court conviction." Ambrosio Decl. ¶ 12. Mr. Ambrosio's last contact with the Petitioner was a July 14, 2021 telephone call, which Mr. Ambrosio believes was related to the defendant's electronic monitoring device. Ambrosio Decl. ¶¶ 13-14.

**ii. Anthony Ricco, Esq. – Arraignment**

Due to Mr. Ambrosio's unavailability, Mr. Ricco represented the Petitioner in connection with his arraignment on November 19, 2021. Ricco Decl. ¶¶ 3-4. Mr. Ricco did not interact with the Petitioner after November 19, and stated that he has no knowledge of the Petitioner's communications with other counsel regarding the allegations made in the Petitioner's Motion. Ricco Decl. ¶¶ 7-8.

**iii. Barry Weinstein, Esq. – Plea and Sentencing**

Mr. Weinstein filed a notice of appearance on behalf of the Petitioner on November 22, 2021 (ECF No. 30), and first met with the Petitioner on that date. Weinstein Decl. ¶ 5. As set forth in Mr. Weinstein's Declaration, Mr. Weinstein wrote "green card" beneath the Petitioner's name in his contemporaneous notes of their first meeting. Mr. Weinstein further affirms that he advised the Petitioner of the immigration consequences of a conviction in his case "starting on November 22, 2021, and many times thereafter," and that the Petitioner's allegations that he was

not so advised are entirely false. *Id.* In addition, Mr. Weinstein affirms that it is his practice to advise each of his non-citizen clients "of all potential immigration consequences they are facing." *Id.* Mr. Weinstein also affirms that the Petitioner's claims not to have a sufficient understanding of the English language are false. Weinstein Decl. ¶ 6. In Mr. Weinstein's words, the Petitioner "never requested a Spanish interpreter because he does not need one" and "did not have any difficulty understanding or answering the Court's questions" during his guilty plea. *Id.* Finally, Mr. Weinstein affirms that the Petitioner told Mr. Weinstein that he was guilty, including by making detailed admissions about how the Petitioner and others carried out the charged fraud scheme. Weinstein Decl. ¶ 9.

## STANDARD OF REVIEW

Under 28 U.S.C § 2255, a court may "vacate, set aside or correct" a conviction or sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. "Relief generally is available only for a constitutional error, defect of jurisdiction, or an error of law constituting a fundamental defect which inherently results in a complete miscarriage of justice." *Shand v. United States*, No. 14-CV-1743 (DLI), 2018 WL 1598608, at *3 (E.D.N.Y. Mar. 30, 2018) (quotation marks omitted). The court must read *pro se* pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

## DISCUSSION

### Exhaustion

Before the Court can examine the merits of the Petition, it must ensure that Petitioner satisfied the exhaustion requirements for a habeas petition. "A criminal defendant can challenge

his conviction by direct appeal to this Court or by collateral attack, seeking a writ of habeas corpus from the federal district court under 28 U.S.C. § 2255. Ordinarily, a defendant must exhaust his direct appeals before applying for habeas relief." *United States v. Vilar*, 645 F.3d 543, 546 (2d Cir. 2011). "[H]abeas petitions filed before the petitioner has exhausted his direct appeal are generally considered premature." *Wall v. United States,* 619 F.3d 152, 154 & n. 2 (2d Cir.2010) (per curiam). Here, Petitioner did not file a direct appeal. "A petitioner has procedurally forfeited any claim that was not timely filed on direct appeal, unless he can show (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence." *Diaz v. United States*, No. 14-CV-7016 (KAM), 2020 WL 3403057, at *7 (E.D.N.Y. June 19, 2020) (internal citations omitted). Petitioner does not show actual innocence. *See Bousley v. United States*, 523 U.S. 614, 623-24 (1998) ("Actual innocence means factual innocence, not mere legal insufficiency.")

Cause and prejudice can be shown if counsel failed to file a notice of appeal against Petitioner's wishes. *Roe v. Flores-Ortega*, 528 U.S. 470, 471 (2000). Petitioner does not allege this, stating only that he did not appeal because he was detained by ICE and was discouraged from filing for post-conviction relief by an attorney. Petition, at 4. The claims in the Petition all could have been raised on appeal, and therefore are barred due to Petitioner's failure to exhaust.

**Grounds for Relief**

However, even if Petitioner's claims are not barred for the reasons stated above, the three grounds raised in the Petition fail because they are without merit or are unreviewable.

**I. Petitioner Has Failed to Demonstrate Ineffective Assistance of Counsel**

"A section 2255 claim of ineffective assistance of counsel must meet the two

requirements established in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Soto v. United States*, No. 19 Civ. 11038 (KMW), 2022 WL 610978, at *2 (S.D.N.Y. Mar. 2, 2022). "To succeed on an ineffective assistance claim, a defendant must demonstrate, first, that 'in light of all the circumstances,' the acts or omissions of trial counsel 'were outside the wide range of professionally competent assistance,' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Nolan*, 956 F.3d 71, 79 (2d Cir. 2020) (quoting *Strickland*, 466 U.S. at 694). "An inability to satisfy either prong causes a claim of ineffective assistance to fail." *Soto*, 2022 WL 610978, at *2.

Here, Petitioner alleges that "Mr. Weinstein [n]ever advised me of any immigration consequences that I would suffer if I were to plead guilty or be found guilty of the charged offense." Petition, at 4. Petitioner says he spoke and understood little English. Additionally, he says, "Defense counsel did not provide specific, substantive advice regarding the immigration consequences of a guilty plea to the charged offense." *Id*.

Under *Strickland*, defense counsel is required to inform clients about immigration consequences of criminal convictions, including possible deportation. *See Padilla v. Kentucky*, 559 U.S. 356, 369 (2010). With respect to the prejudice prong of the *Strickland* test, when the claim of ineffective assistance arises from alleged deficient advice regarding immigration consequences, a petitioner must first "clearly demonstrate that he placed particular emphasis on immigration consequences in deciding whether or not to plead guilty." *Doe v. United States*, 915 F.3d 905, 911 (2d Cir. 2019) (alteration and internal quotation marks omitted). That showing must be made at least in part based on "contemporaneous evidence" that "substantiate[s] a

defendant's expressed preferences," and not merely "post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at 912 (quoting *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). A petitioner must also show that but for counsel's unprofessional errors, the result would have been different. In the context of deficient immigration advice, this might mean "there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense." *Doe*, 915 F.3d at 911 (internal quotation marks omitted).

As to the performance prong of *Strickland*, Petitioner has failed to demonstrate that he was not advised of the immigration consequences of his plea. Petitioner admits that the Judge and his attorney discussed the possibility of him being deported. Petition, at 37. During the change of plea hearing, under oath, Petitioner told the Court that he had discussed the immigration consequences of his plea with Mr. Weinstein. Plea Tr., Dkt. 34 at16:3-11. Immediately thereafter, Mr. Weinstein confirmed the accuracy of the Petitioner's statement that he and the Petitioner had discussed the immigration consequences of the plea. *Id*. at 16:12-14. The Petitioner also told this Court that he had reviewed and authorized the execution of the Plea Agreement, which made clear, among other things, that "if [the defendant] is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory". Plea Tr., Dkt. 34 at 12:14-13:1; Plea Agreement, at 5. Mr. Weinstein has filed a declaration stating, under penalty of perjury, that he advised the defendant of the immigration consequences of the charges he was facing "many times," including at their very first meeting—Mr. Weinstein's contemporaneous notes of which reflect discussion of a "green card." Weinstein Decl. ¶ 5. Mr. Weinstein's argument at sentencing about the defendant's

risk of deportation reflects Mr. Weinstein's understanding of the Petitioner's immigration consequences. Sent. Tr., Dkt. 44 at 6:13-18. Finally, Mr. Ambrosio's sworn declaration indicates that he alerted the Petitioner to a pre-existing likelihood of deportation (based on a state court conviction) on the day of the Petitioner's initial appearance in federal court, thereby putting the Petitioner on notice of immigration consequences before he had even met Mr. Weinstein. Ambrosio Decl. ¶ 12.

The Court does not credit Petitioner's related claim that he had insufficient understanding of the English language and should have been provided with a Spanish interpreter. The Petitioner reported to Probation that he could read, speak, and understand English. PSR ¶ 67. The Petitioner used English to send messages about the fraud scheme and carried out several other aspects of the fraud using English. *See*, *e.g*., Complaint, ECF No. 1, ¶ 14. He allocuted in English before the Court, and made a sentencing statement to the Court in English, in which he repeatedly apologized for his crimes. Plea Tr., Dkt. 34 at 18:21-20:5; Sent. Tr., Dkt. 44 at 9:8, 9:18-21. And none of the Petitioner's three prior attorneys requested a Spanish interpreter for the defendant because, as Mr. Weinstein attested, the defendant "does not need one." Weinstein Decl. ¶ 6. Therefore, Petitioner has not established that his prior counsel's performance fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Court does not need to hold a live hearing in denying Petitioner's ineffective assistance of counsel claim. *Gomez v. United States*, No. 10-CV-1886, 2013 WL 66080, at *7 (E.D.N.Y. Jan. 4, 2013) ("[T]he Second Circuit has made clear that no hearing is required where (1) the allegations of the motion, accepted as true, would not entitle the petitioner to relief; or (2) the documentary record renders a testimonial hearing unnecessary."). Here the documentary record renders a hearing

unnecessary.

**II. Petitioner Does Not Have an Actual Innocence Claim**

Where a petitioner asserts actual innocence after pleading guilty, a "strong presumption of verity . . . attaches to . . . admissions of guilt at a plea allocution." *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001); *Mejia v. United States*, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010) ("A defendant's bare allegations in a § 2255 petition cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth."). The Petitioner signed, and authorized his counsel to sign, a Plea Agreement providing that he had "decided to plead guilty because he is in fact guilty." Plea Agreement, Ex. A at 4. During his plea colloquy, the Petitioner, who does not assert that he lied under oath during that colloquy, admitted that he had committed the fraud conspiracy to which he pleaded guilty—specifically, among other things, that he knowingly and willfully entered into an agreement with others to make purchases using credit cards that belonged to other people, without their permission. Plea Tr., Dkt. 34 at 18:21-20:5. The Petitioner admitted to, and apologized for, his criminal conduct at his sentencing hearing. Sent. Tr., Dkt. 44 at 9:8, 9:18-21. These admissions are consistent with the admissions of guilt that, as Mr. Weinstein attested, the Petitioner made to him in their private discussions. Weinstein Decl. ¶ 9. The Petition does not proffer any evidence to corroborate the "bald statement[s]" of innocence that Petitioner makes, and thus offers no reason to discredit "his prior (and now contradicted) admissions of guilt under oath." *United States v. Gonzalez*, 647 F.3d, 41, 54 (2d Cir. 2011). Therefore, the Petitioner's assertions fall far short of the "extraordinarily high" threshold to prevail on such a claim. *Sweeney v. Laffin*, 2017 WL 4342138, at *7 (S.D.N.Y. Sept. 28, 2017).

**III. Petitioner's Insufficient Evidence Claim Fails**

Finally, Petitioner argues there was insufficient evidence to support his conviction. However, such a claim is not cognizable under § 2255. "The courts have repeatedly held that collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice. A challenge to the sufficiency of the evidence falls well beyond these narrow limits." *Reiter v. United States*, 371 F. Supp. 2d 417, 429 (S.D.N.Y. 2005) (internal citations omitted). The Court therefore cannot review this claim.

Even if the Court were able to review Petitioner's claim that the evidence was insufficient, Petitioner's claim would fail because he knowingly, intelligently, and voluntarily entered into a plea of guilty. *See United States v. Skinner*, No. 13-CR-181-A, 2025 WL 775565 (W.D.N.Y. Mar. 11, 2025), * at 6. The Court can rely on the statements Petitioner made during his allocution, admitting that he committed the fraud conspiracy. *United States v. Santana*, No. 19-CR-687 (VEC), 2023 WL 4304765 (S.D.N.Y. June 29, 2023), at *4 (collecting cases). Therefore, Petitioner's insufficiency of evidence claim is meritless.

**CONCLUSION**

For the aforementioned reasons, the Petition is denied in its entirety. A certificate of appealability shall not issue as Petitioner has not "made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). In forma pauperis status is denied for purposes of an appeal. The Clerk of Court is respectfully directed to terminate this case.

**SO ORDERED.**

**Dated:** August 18, 2026

**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**